CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 8 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 7:07CV00489 |
| v. | ) ) **MEMORANDUM OPINION** ) |
| PEGGY H. SUTPHIN and JODIE M. NEAL, | ) By: Hon. Glen E. Conrad ) United States District Judge ) |
| Defendants. | ) |

State Farm Fire and Casualty Company ("State Farm") filed this action for declaratory judgment, seeking to establish its obligations under a homeowners insurance policy for claims arising out of an incident that occurred outside Peggy H. Sutphin's residence on March 14, 2005. On that date, Sutphin's dog attacked Jodie M. Neal, while she was in Sutphin's driveway, biting the right side of Neal's face, the upper and lower parts of her right arm, and her right buttock. Neal filed a tort action against Sutphin in the Circuit Court of Bland County on March 6, 2007. In turn, State Farm filed this declaratory judgment action naming both Sutphin and Neal as defendants. The case is presently before the court on State Farm's motion for summary judgment. For the reasons set forth below, the motion will be granted.

### Factual and Procedural Background

On March 14, 2005, Neal was employed by one of Sutphin's businesses, Niftus, LLC ("Niftus"), a medical supply company located in Wytheville, Virginia. That afternoon, Neal accompanied her co-worker, Judy Akers, to run a personal errand for Sutphin and to pick up Sutphin's vehicle from a mechanic. After picking up Sutphin's vehicle, Akers drove the vehicle

to Sutphin's residence in Rocky Gap, Virginia. Neal followed Akers in Akers' van. They arrived at Sutphin's residence at approximately 6:15 p.m.

After pulling into Sutphin's driveway and exiting Akers' van, Neal was attacked by Sutphin's dog, "Sasquatch," an Akita[1] that weighed more than 100 pounds. During her deposition, Neal described the incident as follows:

> . . . I was standing right beside the driver's side [of Akers' van] . . . . We had got a few things at Wal-Mart. So I turned to go to open my trunk of my car, and when I did, Sasquatch lunged at my face . . . . And I was kind of shocked, and it just . . . I don't know if I turned and tried to run into the . . . towards Peggy's vehicle or towards the van, I don't remember. But when I tried to go, he knocked me down, and before he knocked me down, he had bit the top of my arm, and he knocked me down, and he bit my backside. As I was trying to get up, he grabbed a hold of my forearm and he wouldn't let go. I was yelling and screaming and trying to get him to quit, and the next thing I know, Judy has him, putting him in the garage.

(Neal Dep. 13-14). Afer putting the dog in Sutphin's garage, Akers drove Neal to the residence of Sutphin's neighbor, Gary Lawson. Lawson looked at Neal's arm, "had his son to get a cloth or something and wrapped [it] around her arm, and just told [Akers] to get her to the hospital." (Akers Dep. 9).

Akers subsequently drove Neal to St. Luke's Hospital in Bluefield, West Virginia, where emergency room personnel "took her straight in and started working on her." (Akers Dep. 13). Neal remained in the hospital from March 14, 2005 until March 17, 2005.

---

[1] "[T]he name Akita, taken from the name of the Japanese prefecture where it was originally bred, denotes 'any of a breed of large, powerful dog with a thick coat, erect ears, and a bushy, curled tail.'" Wright v. Calvin Reed Constr. Co., 723 So.2d 55, 56 (Ala. Civ. App. 1997) (quoting Webster's New World Dictionary of the American Language (2d Collegiate ed. 1986)).

2

Sutphin was not at home at the time of the incident. However, after Neal was admitted to the hospital, Akers called Sutphin and Sutphin "went straight to the hospital." (Sutphin Dep. 16). Upon her arrival, Sutphin went to see Neal and observed the extent of her injuries:

> A. I saw – I saw – I don't remember if they had bandaged them or not. I just remember I saw her arm, and that was prevalent in my mind, her arm.
>
> Q. Okay. Sasquatch had bitten down on her arm.
>
> A. Yes.
>
> Q. Do you know what parts of her arm had been injured?
>
> A. I just remember the gashes. I just can't remember exactly where they were. I mean, you know, I have copies of photos to remember in my mind, I just thought it was a bad injury.
>
> Q. Did Sasquatch also bite her face?
>
> A. I can't remember. I think there was a small place because she didn't have any big rips or tears or anything on her face.
>
> Q. Okay.
>
> A. But I mean the arm was what would really shock you when you saw it.
>
> Q. Okay. Do you recall whether Miss Neal was in pain when you saw her?
>
> A. I'm sure she was. I'm sure, hopefully they gave her something for pain.

(Sutphin Dep. 17-18).

After the March 14, 2005 incident, Neal did not return to work at Niftus or perform any work or services for the company. Nonetheless, over the next two years, Sutphin continued to make payments to Neal as if Neal was still employed, explaining that she did it "[b]ecause it was

3

the right thing to do," and that she "felt so sorry and so bad." (Sutphin Dep. 21). Sutphin also paid Neal's out-of-pocket medical expenses for two years following the incident, which included "anything that wasn't covered by [Neal's] insurance" (Sutphin Dep. 27), as well as expenses associated with traveling to medical appointments. In total, Sutphin paid approximately $53,000 to or for the benefit of Neal during the two-year period following the incident.

On March 14, 2005, the date of the dog bite incident, Sutphin maintained a homeowner's insurance policy with State Farm. The relevant policy provides that personal liability coverage is available to an insured "[i]f a claim is made or suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence** . . . ." (Compl. Ex. B at 14) (emphasis in original). The policy further provides however, that in the event of an accident or occurrence, an insured is required to "give written notice to [State Farm] or [a State Farm] agent as soon as practicable. . . ."[2] (Compl. Ex. B at 18).

Sutphin did not notify State Farm about the dog bite incident until April 5, 2007, when she advised her insurance agent that she had been served with a copy of the tort action filed by

---

[2] Subsection 3 of Section II - Conditions states, in pertinent part, as follows:

> 3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:
> a. give written notice to us or our agent as soon as practicable, which sets forth:
>   (1) the identity of this policy and **insured**;
>   (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and
>   (3) names and witnesses of any claimants and available witnesses.

(Compl. Ex. B. at 18) (emphasis in original).

4

Neal. During her deposition, Sutphin explained that she did not notify State Farm of the incident any sooner because she was tying to take care of the matter herself:

> Q. Do you recall telling [State Farm Representative] Mark Gardner that up until you had been served [with] the lawsuit, you had been trying to handle this matter yourself?
>
> A. Yes.
>
> Q. And then you were served [with] this lawsuit?
>
> A. Yes.
>
> Q. And as a result, you were putting State Farm on notice?
>
> A. Right.
>
> Q. Okay.
>
> A. The reason was that I was trying to do what was right, and then I knew I really needed representation, you know, with a lawsuit.

(Sutphin Dep. 102).

State Farm agreed to defend Sutphin in the tort action while reserving its right to deny coverage under the homeowner's policy. State Farm then filed this action, invoking diversity jurisdiction under 28 U.S.C. § 1332 and seeking a declaration that it owes no duty to defend or indemnify Sutphin with respect to the claims asserted by Neal. State Farm contends, in part, that Sutphin breached the notice provision of the homeowner's insurance policy, and thus, that it is not contractually bound to indemnify or defend her.

State Farm moved for summary judgment on April 29, 2008. On May 17, 2008, Sutphin filed a motion for extension of time to respond to the motion. Sutphin's motion was granted, and she subsequently filed a response to the motion for summary judgment on May 26, 2008. State

5

Farm and Sutphin have advised the court that they do not desire a hearing on the motion. The motion for summary judgment is therefore ripe for review.[3]

## Standard of Review on Summary Judgment

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

Under Virginia law, which State Farm and Sutphin agree applies in this diversity action, an insurance policy provision requiring notice of an accident or occurrence "as soon as practicable" is reasonable and enforceable. State Farm Mut. Auto Ins. Co. v. Porter, 272 S.E.2d 196, 198-199 (Va. 1980). Moreover, an insured's "substantial compliance" with the notice provision "is a condition precedent to an insurance company's liability coverage." State Farm Fire and Cas. Co. v. Walton, 423 S.E.2d 188, 192 (Va. 1992) (internal citations and quotations

---

[3] The court notes that although Neal filed an answer to the complaint, she has not filed a brief or other response opposing summary judgment. Consequently, State Farm's motion for summary judgment is deemed unopposed by Neal. See Dec. 5, 2007 Scheduling Order at para. 6 ("Except for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be unopposed.").

omitted). The Supreme Court of Virginia has defined an "occurrence" that gives rise to a duty to notify as "an incident which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy." <u>Id.</u> (internal citations and quotations omitted). Additionally, the Supreme Court has interpreted the requirement that notice be given "as soon as practicable" to mean that "it must be given within a reasonable time after the accident." <u>State Farm Fire and Cas. Co. v. Scott</u>, 372 S.E.2d 383, 385 (Va. 1988).

The question of whether notice of an accident or occurrence has been given "as soon as practicable" is generally "one of fact for the jury, or the court sitting without a jury, when the facts are disputed or the inferences uncertain, or when there are extenuating circumstances for the delay." <u>State Farm Mut. Auto. Ins. Co. v. Douglas</u>, 148 S.E.2d 775, 777 (Va. 1966). However, "when the facts are undisputed and certain the question becomes one of law for the court." <u>Id.</u> Stated differently, "the question of delayed notice may be decided as a matter of law where reasonable men could not differ as to the inferences to be drawn from the undisputed facts." <u>Atlas Ins. Co. v. Chapman</u>, 888 F. Supp. 742, 745 (E.D. Va. 1995).

In this case, it is undisputed that Sutphin learned about the dog bite incident soon after it occurred, and that she observed the extent of Neal's injuries on the very date of the incident. Given the uncontested circumstances of the dog bite incident, the admittedly "severe" and "shock[ing]" nature of Neal's injuries (Sutphin Dep. at 17-18), the medical treatment that Neal's injuries required, and the fact that Neal was unable to return to work following the incident, there is no question that the dog bite incident was "sufficiently serious to lead a person of ordinary

intellect and prudence to believe that it might give rise to a claim for damages." Walton, 423 S.E.2d at 192.

As a result, Sutphin was required to notify State Farm within a reasonable time after the dog bite incident. Scott, 372 S.E.2d at 385. Sutphin concedes that she did not provide any notice to State Farm until after she was served with the complaint in Neal's tort action, 752 days after the incident occurred. The court finds that a delay of 752 days was unreasonable as a matter of law, and that it was a substantial and material breach of the insurance policy's notice requirement. See Chapman, 888 F. Supp. at 746 (finding as a matter of law that a 126-day delay in notifying the insurer was a substantial and material violation of the insurance policy's notice requirement); see also Virginia Farm Bureau Mut. Ins. Co. v. Sutherland, No. 7:03CV00122, 2004 U.S. Dist. LEXIS 20799, at *5 (W.D. Va. Oct. 19, 2004) (finding as a matter of law that a 601-day delay in notifying the insurer regarding an accident was "beyond the outer limits of reasonableness" and "a substantial and material breach of a condition precedent of the policy").

The court also concludes that Sutphin has failed to provide a viable excuse for the delay. In response to State Farm's motion for summary judgment, Sutphin merely suggests that she did not believe that Neal would file suit against her, contending that "[s]he did not feel responsible" and that "[s]he made payments because she felt sorry for Neal." (Sutphin's Br. 12). As State Farm explains in its reply brief, however, Sutphin's failure to provide timely notice is not justified by her subjective belief that a lawsuit would not be filed. To the contrary, the duty to provide prompt notice of an accident or occurrence is governed by objective standards, and "an insured's subjective opinion that an accident will not precipitate a claim under the policy is

8

irrelevant to the question of whether notice should be provided." Chapman, 888 F. Supp. at 745; see also Gov't Employees Ins. Co. v. Gilmer, 32 Va. Cir. 94, 97 (Va. Cir. Ct. 1993) ("Gilmer's only reason for not reporting the accident was that she did not believe that Hudson was injured and that she would undertake to personally pay for the damage to his vehicle. While she is free to make this election, she does so [at] the risk of the loss of her insurance coverage for failure to notify her insurer within a reasonable time after the accident."). Accordingly, Sutphin's asserted excuse for failing to comply with the notice requirement is without merit.

Sutphin argues, in the alternative, that even if she violated the insurance policy's notice requirement, there is a genuine issue of material fact in dispute as to whether her breach of the requirement was substantial and material. Sutphin further argues that "prejudice is a factor to consider" with respect to this issue (Sutphin's Br. 13), and that there is no evidence that State Farm has been prejudiced by the fact that she waited 752 days to provide notice of the dog bite incident. This alternative argument, however, also lacks merit.

The Supreme Court of Virginia has held that "[w]hen a violation of the notice requirement is substantial and material, the insurer is not required to show that it has been prejudiced by the violation." Scott, 372 S.E.2d at 385. Although the absence of prejudice may be relevant to the issue of the materiality of the information that an insured should have provided, "when no notice is given, lack of prejudice is not an issue, and the failure to give the required notice becomes a matter of law." Walton, 423 S.E.2d at 192 (emphasis added). In other words, "[a]bsence of prejudice is relevant to materiality only where the insured gives incomplete information to the insurer, not where, as here, the insured provides no information at all." Sutherland, 2004 U.S. Dist LEXIS 20799 at *7. Because Sutphin provided no notice to State

9

Farm until 752 days after the dog bite incident, and the court finds that such delay constitutes a substantial and material violation of the insurance policy's notice requirement, State Farm is not required to show that it was prejudiced by the delay.

### Conclusion

For the reasons stated, the court finds that Sutphin failed to provide reasonable notice of the March 14, 2005 dog bite incident, a condition precedent to State Farm's obligations under the homeowner's insurance policy. Thus, State Farm owes no duty to defend or indemnify Sutphin for any of the claims asserted in the underlying tort action, and the court will grant State Farm's motion for summary judgment.[4]

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 18th day of June, 2008.

*/s/ Glen Conrad*
United States District Judge

---

[4] Given the court's ruling, the court finds it unnecessary to consider whether Sutphin also violated other provisions of the homeowner's insurance policy following the dog bite incident.

10